Lillie **DAVIS**, Plaintiff–Appellant,

v.

Donna **SHALALA**, Secretary of Health and Human Services, Defendant–Appellee.

No. 91–7453.

United States Court of Appeals, Eleventh Circuit.

March 9, 1993.

Booker & Lassiter, Byron A. Lassiter, Fairhope, AL, for plaintiff-appellant.

**530**

J.B. Sessions, III, U.S. Atty., Mobile, AL, Bruce R. Granger, Elyse Sharfman, Joseph P. Palermo, III, Mary Ann Sloan, Mack A. Davis, Office of the General Counsel, Atlanta, GA, for defendant-appellee.

Before HATCHETT, EDMONDSON and BIRCH, Circuit Judges.

HATCHETT, Circuit Judge:

In this Social Security case, as a matter of first impression in this circuit, we hold that the applicable regulations require the Secretary of Health and Human Services to consider the combined impact of a claimant's impairments when determining whether the claimant meets or equals the second requirement under section 12.05(C) of the Listing of Impairments.

## BACKGROUND

On April 22, 1986, Lillie Davis, the appellant, applied for Supplemental Security Income, alleging disability due to allergic rhinitis and vasomotor rhinitis. In support of her application, Davis submitted the report of Dr. Clark who diagnosed Davis as suffering from allergic rhinitis and vasomotor rhinitis and stated that Davis's prognosis for treatment was unfavorable. Davis's application also included the report of Dr. Harris who concluded that Davis's allergies were controllable if she followed the treatment directions. The Secretary of Health and Human Services (Secretary), the appellee, denied Davis's application initially and after reconsideration. Davis requested a hearing before an administrative law judge (ALJ).

At the hearing, Davis testified that she was allergic to "everything," and that the allergy medication made her "spaced out" and did not relieve her symptoms. Davis also testified that she suffered from arthritis in her right arm, hand, and shoulder, and also suffered from numbness in her left hand and weakness in her knees. On January 16, 1987, the ALJ concluded that Davis was not disabled, finding that the medical evidence establishes a "severe allergic condition and possibly early rheumatoid arthritis," but that Davis's impairment or combination of impairments did not meet or equal a listed impairment and that she has the residual functional capacity to perform past relevant work. On April 2, 1987, the Appeals Council denied Davis's request for a review of the ALJ decision, and thus the ALJ's decision became the final decision of the Secretary. On April 28, 1987, Davis filed this case attacking the Secretary's final decision in the district court. The district court adopted the Recommendation of a United States Magistrate and remanded the case for further evaluation in light of newly submitted evidence.

On remand, Davis contended that she met the requirements for disability under the Listing of Impairments. Davis testified and presented evidence to the ALJ about her mental health treatments to deal with symptoms of depression, insomnia, nervousness, and auditory hallucinations. Davis also presented several medical reports to the ALJ, including: (1) Dr. Harris's records indicating that Davis had taken allergy shots consistently between May, 1986 and February, 1989; (2) Dr. Hardin's evaluation suggesting that Davis may suffer from mild carpal tunnel syndrome, even though he experienced difficulty determining the presence of the disease; (3) Dr. Foster's two-sentence letter, stating that Davis was permanently disabled because of her rheumatoid arthritis and chronic allergies; (4) Dr. Bender's report that Davis did not suffer any orthopaedic-related disability; (5) Dr. Welsh's report which stated that Davis was mildly retarded based on her I.Q. scores, but reported that he found no evidence of significant depression, anxiety, psychotic thinking, or manic behavior.

After considering Davis's application in light of the additional evidence, the ALJ again concluded that Davis was not disabled. In sequential evaluation steps one and two, the ALJ found that Davis had not engaged in substantial gainful activity since February, 1986, and that Davis has "a medically severe impairment resulting

from borderline retardation." [1] Applying the regulations on the Listing of Impairments, the ALJ determined that Davis had a valid I.Q. of 69, but concluded that neither her carpal tunnel syndrome, her adjustment disorder, nor her allergies constituted "an additional and significant" impairment, under 20 C.F.R., Part 404, Subpart P, Appendix 1, § 12.05(C) (1992). Lastly, the ALJ found that Davis has the residual functional capacity to perform work related activities "except for work involving mentally complex jobs," because of her borderline retardation. On January 30, 1990, the Appeal Council denied Davis's request for a review and affirmed the ALJ's decision.

On February 9, 1990, Davis filed this lawsuit in the district court, alleging that the Secretary's final decision is erroneous under the applicable regulations and that substantial evidence does not support it. The district court accepted the report and recommendation of the magistrate judge and affirmed the final decision of the Secretary, finding that substantial evidence did support the final decision of the Secretary.

## CONTENTIONS OF THE PARTIES

On appeal, Davis contends that the ALJ misapplied section 12.05(C) of the Listing of Impairments. Specifically, Davis argues that the ALJ evaluated her claims of additional and significant work-related impairments separately rather than in combination, as required in the regulations concerning multiple impairments. In addition, Davis contends that substantial evidence does not support the Secretary's final decision denying her disability under section 12.05(C). The Secretary concedes that Davis meets the first prong of section 12.-05(C) based on her valid I.Q. score of 69, and also concedes that the ALJ considered Davis's other impairments separately rather than evaluating whether their combined effects cause an additional and significant work-related impairment. The Secretary, however, contends that the ALJ determined properly that Davis did not satisfy the second prong of section 12.05(C) because the regulations do not always require that an ALJ consider the combined effect of a claimant's impairments in sequential evaluation step three. The Secretary also contends that substantial evidence does support the ALJ's determinations.

## ISSUES

Thus, the issues presented are (1) whether the regulations require an ALJ to consider the combined effect of alleged impairments when making a determination under the second part of section 12.05(C); and (2) whether substantial evidence supports the ALJ's determinations.

## DISCUSSION

■ In reviewing the Secretary's determination on a claim for benefits, this court has the limited role of determining whether substantial evidence supports the Secretary's factual determinations. *See Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir.1987). This court, however, reviews the Secretary's legal conclusions *de novo* because no presumption of validity attaches to the Secretary's determination of the proper legal standards to be applied in evaluating claims. *Bridges*, 815 F.2d at 624; *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir.1982).

■ To establish a disability under section 12.05(C), a claimant must establish: "a valid verbal, performance, or full scale IQ score of 60 through 70 and a physical or other mental impairment imposing additional and significant work-related limitation of function." 20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.05(C) (1992); *see Edwards by Edwards v. Heckler*, 755 F.2d 1513, 1517 (11th Cir.1985) (recognizing that "sig-

---

**1.** We note that the ALJ's finding on "severity" in step two is based on Davis's mental retardation in the remand decision, which is contrary to the finding in the original January 16, 1987 decision that Davis suffered from a "severe allergic condition and possibly early rheumatoid arthritis."

Apparently, the ALJ modified the basis for his findings based on additional evidence submitted subsequent to remand. Still, the ALJ found on remand that "the claimant's allergies are no more than moderate in severity," even though treatable.

nificant" under section 12.05(C) involves something more than slight or minimal, but less than "severe"). As stated previously, the Secretary concedes that Davis meets the first part of this requirement based on her valid I.Q. score of 69. But, the Secretary argues that the use of "a" physical or other mental impairment in section 12.05(C) precludes the consideration of the combined effect of impairments under the second prong of section 12.05(C). Davis argues that the regulations require an ALJ to consider the combined effect of her additional mental and physical impairments when making a determination under the second prong of section 12.05(C).

We consider the claims of the parties in light of the general rules on evaluating disability set forth in sections 416.920 through 416.923. See 20 C.F.R. § 416.901(d); §§ 416.920(a)–(f); see also McDaniel v. Bowen, 800 F.2d 1026, 1030 (11th Cir.1986) (explaining the five steps). In step one of the sequential evaluation, the Secretary determines only whether a claimant is engaged in substantial, gainful activity and gives no consideration to a claimant's alleged disabilities either separately or in combination. See 20 C.F.R. § 416.920(b). In sequential evaluation step two, the Secretary determines whether a claimant has a "severe" impairment or combination of impairments that causes more than a minimal limitation on a claimant's ability to function. See 20 C.F.R. § 416.920(c). If the Secretary finds, at step two, "a medically severe combination of impairments, the combined impact of the impairments will be considered throughout the disability determination process." See 20 C.F.R. § 416.923. In sequential evaluation step three, the Secretary determines whether a claimant's impairment meets or equals a disability described in the Listing of Impairments, which describes impairments that are considered severe enough to prevent a person from doing any gainful activity. See 20 C.F.R. §§ 416.920(d), 416.925(a). Finally, in sequential evaluation steps four and five, the Secretary makes an assessment of a claimant's residual functional capacity, in light of a claimant's past work experience, age, and education. See 20 C.F.R. §§ 416.920(e) and 416.920(f).

Hence, the plain language of the regulations makes it clear that the Secretary must consider the combined effect of a claimant's alleged impairments in sequential evaluation step two. See 20 C.F.R. § 416.920(c). In addition, if the Secretary finds a medically severe combination of impairments in step two, the regulations provide that the Secretary must consider the impact of the medically severe combination of impairments throughout the disability determination process. See 20 C.F.R. § 416.923. Thus, we must determine only whether the regulations require the Secretary to consider impairments in combination in sequential evaluation step three where the Secretary has found one "severe" impairment in step two. We now hold that the regulations require the Secretary to consider the combined impact of a claimant's impairments when determining whether the claimant meets or equals the second requirement under section 12.05(C) of the Listing of Impairments, which is defined in terms of functional criteria.

The overall scheme of the regulations supports our ruling that an ALJ must consider the combined effects of impairments when making a determination on the second prong of section 12.05(C). The Secretary urges this court to interpret the regulations on multiple impairments as imposing an absolute duty to consider the combined effects of impairment in the step two "severity" determination, and imposing only a conditional duty in the remaining steps. But, the regulations require explicitly that an ALJ always give at least some consideration of the combined effects of impairments during sequential evaluation step three. Although the regulations do not provide that an ALJ must consider the combined effects of a claimant's impairments when determining whether the claimant "meets" a listed impairment, the regulations do require that an ALJ consider the combined effects of impairments when deciding whether impairment(s) "equal" a listed impairment. See 20 C.F.R. §§ 404.1526(a), 416.926(a). Both sections 404.1526 and 416.926(a) describe how "med-

ical equivalence" is determined under the Listing of Impairments, providing in the relevant parts: "If you have more than one impairment, and none of them meets or equals a listed impairment, we will review the symptoms, signs, and laboratory findings about your impairments to determine whether the combination of your impairments is medically equal to any listed impairment." 20 C.F.R. §§ 404.1526(a), p. 320, 416.926(a), p. 649 (1992).

■ Unlike the general rule on multiple impairments stated in section 416.923, sections 404.1526(a) and 416.926(a) are specifically applicable to the Listing of Impairments and do not condition the duty to consider the combined effects of impairments on a finding of a medically severe combination of impairments in sequential evaluation step two.[2] Thus, the Secretary's contention that an ALJ is never required to consider impairments in combination in step 3 is contrary to the plain language in the regulations on the Listing of Impairments. The requirement in sections 404.1526(a) and 416.926(a) that an ALJ consider the combination of a claimant's impairments when determining medical equivalence to a listed impairment makes the Secretary's position untenable. In applying the regulations on the Listing of Impairments, an ALJ must determine both whether a claimant "meets" and whether a claimant "equals" a listed impairment. *See* § 416.920(d). Hence, the requirement in sections 404.1526(a) and 416.926(a) that an ALJ consider the combination of impairments during a determination of medical equivalence imposes an absolute duty on the ALJ to consider the combined effects of a claimant's impairments, at least once, before concluding an evaluation under the Listing of Impairments. Accordingly, we hold that the ALJ erred when he did not consider whether the combination of

Davis's alleged allergies and mild carpal tunnel syndrome imposed "significant" limitations on her functional abilities under section 12.05(C).

■ Our interpretation is consistent with the Supreme Court's recent decision in *Sullivan v. Zebley*, 493 U.S. 521, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990). After recognizing that a claimant may show that their combined impairments are "equivalent" to a listed impairment, the *Zebley* Court limited the scope of the equivalence evaluation, recognizing that "a claimant cannot qualify for benefits under the 'equivalence' step by showing that the overall functional impact of his unlisted impairment or combination of impairments is as severe as that of a listed impairment." *Zebley*, 493 U.S. at 531–32, 110 S.Ct. at 892. The Court in *Zebley*, however, recognized that an overall functional assessment is possible when the Secretary's own listings are defined in terms of functional criteria. *Zebley*, 493 U.S. at 540 n. 21, 110 S.Ct. at 897 n. 21 (reviewing a determination under the Child–Disability Listings and mentioning specifically section 112.05(C) which requires an I.Q. of 60 through 69 and "a physical or other mental impairment imposing additional and significant restriction of function or developmental progression"). The language which the *Zebley* Court recognized as a functional criteria in section 112.05(C) of the Child–Disability Listings is essentially equal to section 12.05(C)'s criteria of "a physical or other mental impairment imposing additional and significant work-related limitation of function." *See* 20 C.F.R. Part 404, Subpart P, Appendix 1 § 112.05(D) (1992). Hence, the ruling in *Zebley* does not limit an ALJ's consideration of the combined effects of impairments on functional capacity when the listed impairments are defined in terms of

---

2. The full text of section 416.923 states:

In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of

sufficient severity. If we do find a medically severe combination of impairments, the combined impact of the impairments will be considered throughout the disability determination process. If we do not find that you have a medically severe combination of impairments, we will determine that you are not disabled (see §§ 416.920 and 416.924).

functional criteria, as in the second prong of section 12.05(C).

In addition to the support in the regulatory scheme, our ruling is consistent with the policies underlying this court's previous rulings on an ALJ's duty to consider the combined effect of a claimant's impairments. This court has repeatedly held that an ALJ must make specific and well-articulated findings as to the effect of the combination of impairments when determining whether an individual is disabled. *Walker v. Bowen*, 826 F.2d 996, 1001 (11th Cir. 1987); *Jones v. Bowen*, 810 F.2d 1001, 1006 (11th Cir.1986); *Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir.1984). We have reasoned that " 'it is certain that mental and psychological defects can combine with physical impairments to create total disability to perform gainful employment.' " *Bowen v. Heckler*, 748 F.2d at 634 (citing *Brenem v. Harris*, 621 F.2d 688, 690 (5th Cir.1980)). In *Bowen v. Heckler*, this court also cited with approval the reasoning of other courts that a disability claimant should be evaluated as a whole person, and not evaluated in the abstract as having several hypothetical and isolated illnesses. *See Tingling v. Secretary of Health and Human Services*, 575 F.Supp. 905, 909 (S.D.N.Y.1983) (recognizing that an ALJ must view the individual claimant as a whole and must not evaluate disability claimants as having several isolated symptoms); *Karp v. Schweiker*, 539 F.Supp. 217, 220 (N.D.Cal.1982) (recognizing that "each illness, standing alone and measured in the abstract, may not be disabling. But, disability claimants are not to be evaluated as having several hypothetical and isolated illnesses."); *see also Landess v. Weinberger*, 490 F.2d 1187, 1190 (8th Cir.1974) (reasoning that claimants are real people and entitled to have their disabilities measured in terms of their total physiological well-being). Thus, in addition to the regulatory scheme, this court's longstanding policy favoring evaluation of a disability claimant's "whole person" requires that we reject the Secretary's position which would allow evaluation of claimants as persons with mere hypothetical and isolated illnesses.

## CONCLUSION

■ We reverse the order of the district court affirming the decision of the Secretary. We conclude that the Secretary applied the wrong legal standards based on the support in the overall regulatory scheme, particularly sections 404.1526(a) and 416.926(a), and based on the policies underlying our previous rulings on an ALJ's duty to consider the combined impact of impairments. We hold that the regulations require the Secretary to consider the combined impact of a claimant's impairments when determining whether the claimant equals the requirements for a listed impairment which, like the second prong of section 12.05(C), is defined in terms of functional criteria.

■ Generally, a reversal with remand to the Secretary is warranted where the ALJ has failed to apply the correct legal standards. *See Walker v. Bowen*, 826 F.2d at 1001–02. This court, however, may reverse the judgement of the district court and remand the case for an entry of an order awarding disability benefits where the Secretary has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt. *Bowen v. Heckler*, 748 F.2d at 635–36. In this case, the ALJ concluded on remand that new evidence established that Davis did not suffer from rheumatoid arthritis and that she did not suffer from an adjustment disorder. The ALJ, however, accepted Dr. Hardin's finding that Davis had a mild carpal syndrome and also accepted Dr. Harris's finding that Davis suffered from allergic rhinitis which "would be no more than moderate in severity." Based on the ALJ's acceptance of the findings on mild carpal syndrome and allergic rhinitis, we readily conclude that the combined impact of Davis's allergies and mild carpal tunnel syndrome imposed more than a slight or minimal, even though less than a severe, limitation on her functional abilities. *See Edwards by Edwards*, 755 F.2d at 1515 (recognizing that a limitation is "significant" under 12.-05(C) if it is more than slight or minimal,

which is less than "severe").[3] Accordingly, we remand to the district court for entry of an order directing the Secretary to award Davis benefits. *See Bowen v. Heckler,* 748 F.2d at 637.

REVERSED AND REMANDED.

---

**3.** Because of our conclusion on the combined impact of Davis's additional impairments, we need not reach the issue of whether substantial evidence supports the Secretary's conclusion that neither mild carpal tunnel syndrome nor allergic rhinitis, considered separately, satisfies the more than slight or minimal test. We do note that it appears that the ALJ rejected Davis's contention that the "moderately severe" allergic rhinitis represented a "significant" additional impairment, based in part on Dr. Harris's conclusion that Davis could continue taking medications to control the allergic rhinitis. It is settled, however, that the presence of a more than slight or minimal limiting impairment satisfies the second criteria of section 12.05(C), even if the impairment is treatable. *See Edwards by Edwards,* 755 F.2d at 1516 (concluding that a claimant with a valid I.Q. of 67 and chronic obstructive lung disease and exercise induced asthma satisfied the requirements for section 12.05(C) disability, even though the evidence established that the additional impairments were not, of themselves, disabling because the claimant was doing well with medications and controlling his exercise).