**Patsy BERRYMAN, Plaintiff,**

v.

**Larry G. MASSANARI, Commissioner of Social Security, Defendant.**

**No. CIVA. 00–G–2726–M.**

United States District Court,
N.D. Alabama,
Middle Division.

Aug. 1, 2001.

Myron K. Allenstein, Allenstein & Associates, Gadsden, AL, for Plaintiff.

Alice H. Martin, U.S. Attorney, Birmingham, Asst. U.S. Attorney, Mary Ann Sloan, Doug Wilson, Social Security Administration Office of General Counsel, Atlanta, GA., for Defendant.

## *MEMORANDUM OPINION*

GUIN, District Judge.

The plaintiff, Patsy Berryman, brings this action pursuant to the provisions of section 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner of the Social Security Administration (the Commissioner) denying her application for disability insurance benefits under §§ 216(i) and 223 of the Act. 42 U.S.C. §§ 416(i) and 423.[1]

---

1. In general the legal standards to be applied are the same regardless of whether a claimant

Patsy Berryman filed an application for a period of disability, disability insurance benefits (DIB), and Supplemental Security Income Benefits (SSI), with a protective filing date of February 28, 1997.[2] Thereafter, plaintiff timely pursued and exhausted her administrative remedies available before the Commissioner. Accordingly, this case is now ripe for judicial review under § 205(g) of the Act.

## STANDARD OF REVIEW

■ The sole function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Bloodsworth v. Heckler,* 703 F.2d 1233, 1239 (11th Cir.1983). To that end this court "must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth,* at 1239 (citations omitted). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Bloodsworth,* at 1239.

## STATUTORY AND REGULATORY FRAMEWORK

In order to qualify for disability benefits and to establish his entitlement for a period of disability, a claimant must be dis-

seeks Disability Insurance Benefits (DIB), to establish a "Period of Disability," or to recover Supplemental Security Income (SSI). However, different statutes and regulations apply to each type of claim. Many times parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations of statutes or regulations found in quoted court decisions.

2. The plaintiff's claim for Supplemental Security Income Benefits (SSI) is not at issue in

abled. The Act defines disabled as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months ...." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(i). For the purposes of establishing entitlement to disability benefits, "physical or mental impairment" is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

■ In determining whether a claimant is disabled, Social Security regulations outline a five-step sequential process. 20 C.F.R. § 404.1520(a)-(f). The Commissioner must determine in sequence:

(1) whether the claimant is currently employed;

(2) whether she has a severe impairment;

(3) whether her impairment meets or equals one listed by the Secretary;[3]

(4) whether the claimant can perform her past work; and

the present appeal. The initial ALJ's decision that the plaintiff was entitled to SSI benefits was not overturned by the Appeals Council in its April 16, 1999, order. [R 227].

3. The Listing of Impairments, (the "listings") found at 20 C.F.R. Part 404, Subpart P, Appendix 1, are used to make determinations of disability based upon the presence of "impairments which are considered severe enough to prevent a person from doing any gainful activity." 20 C.F.R. § 404.1525. If a claimant establishes that his condition meets, or is medically equivalent to, the requirements of a particular listing, he will be found disabled.

(5) whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala,* 998 F.2d 473, 477 (7th Cir.1993); *accord McDaniel v. Bowen,* 800 F.2d 1026, 1030 (11th Cir.1986). "Once the claimant has satisfied Steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her past work, the burden shifts to the Secretary to show that the claimant can perform some other job." *Pope,* at 477; *accord Foote v. Chater,* 67 F.3d 1553, 1559 (11th Cir.1995).

## PROCEDURAL BACKGROUND

The plaintiff's claims for disability insurance benefits (DIB) and SSI were denied initially and the plaintiff pursued her administrative remedies. On September 24, 1998, a hearing was held before an ALJ. At the outset of the hearing, the ALJ observed that pulmonary function tests taken by plaintiff in May 1997 had yielded results that met the requirement of the Listings of Impairments. [R 52–53] The ALJ then suggested the plaintiff amend her onset date to May 8, 1997, which she agreed to do. [R 52–53] The ALJ then announced he would find the plaintiff met the listings based upon the May 1997 pulmonary function tests. The ALJ subsequently issued a written decision finding that the plaintiff met Listing 3.02A and has been disabled since May 8, 1997. The ALJ also found the plaintiff met the insured status requirements of the Social Security Act on that date and thereafter through the date of his decision, November 2, 1998. [R 220] Based upon these findings, the ALJ determined the plaintiff was entitled to an award of both DIB and SSI.

Subsequent to the ALJ's decision, the Appeals Council was informed by the Southeastern Program Service Center that the plaintiff only met the insured status requirements of the Act through December 31, 1996. The Social Security Act requires that a claimant establish "disability" prior to the expiration of her insured status to be eligible for disability insurance benefits under Title II of the Act. *See* 42 U.S.C. § 423(a), § 423(c); 20 C.F.R. § 404.101, § 404.130, § 404.131. Subsequent to being notified that her insured status expired on December 31, 1996, the plaintiff amended her onset date to July 1, 1996. On August 11, 1999, the Appeals Council vacated the ALJ's decision with respect to benefits under Title II and remanded the case for consideration of whether the plaintiff was disabled on or prior to December 31, 1996. There is no insured status requirement for SSI, therefore, as noted above, the Appeals Council did not vacate that portion of the ALJ's decision awarding SSI benefits. [R 227]

A second hearing was held before a different ALJ on October 13, 1999. On December 13, 1999, the ALJ issued a decision finding that the plaintiff retained the ability to perform her past relevant work from July, 1996, her amended onset date, through December 31, 1996. Accordingly, the ALJ found the plaintiff was not entitled to disability insurance benefits. The Appeals Council denied the plaintiff's request for review.

## DISCUSSION

■ The first ALJ found that the plaintiff met Listing 3.02A based upon the pulmonary function testing performed in May 1997. The Appeals Council did not vacate the portion of the first ALJ's decision awarding SSI benefits. The award of SSI benefits was based upon a finding that the plaintiff met Listing 3.02A on and subsequent to May 8, 1997. Therefore, it is established that the plaintiff met Listing 3.02A based upon the May 1997 testing

and the Appeals Council remanded the case for the sole purpose of determining whether the plaintiff was disabled as of December 31, 1996. There is no medical evidence in the record tending to show that the plaintiff's condition worsened appreciably between December 31, 1996 and May 8, 1997, a span of just over four months. In fact, there is medical evidence indicating the plaintiff was disabled prior to December 31, 1996, due to her respiratory disease. In June 1996, Dr. Brown, one of the plaintiff's treating physicians, diagnosed the plaintiff with COPD (chronic obstructive pulmonary disease.) [R 187] In February 1997, Dr. Brown noted that the plaintiff "[i]s totally and permanently disabled due to COPD." [R 186] These medical records, suggest that the plaintiff's respiratory problems were severe prior to the pulmonary function testing done in May 1997, and there is simply no medical evidence to suggest that she did not meet Listing 3.02A as of December 31, 1996. COPD is a chronic disease and the absence of evidence suggesting a sudden worsening prior to the May 1997 testing, means it is almost certain that the plaintiff met listing 3.02A as of December 31, 1996.

■ In addition to Listing 3.02A, the plaintiff without question meets Listing 12.05C. Listing 12.05C requires that the claimant have "A valid verbal, performance, or full-scale I.Q. of 60 through 70 and a physical or other mental impairment imposing additional and significant work-related limitation of function." *Davis v. Shalala,* 985 F.2d 528, 531 (11th Cir.1993)(quoting Listing 12.05C). The plaintiff underwent a psychological evaluation by M.D. Lyons, Ph. D., on October 8, 1999. Dr. Lyons performed I.Q. testing which yielded a full scale I.Q. of 69. [R 247] This clearly meets the first part of Listing 12.05C. However, the second ALJ rejected Dr. Lyons' test results stating:

"[t]he examiner gave no statement as to the validity of such scores." [R 20] However, in the next sentence, the ALJ noted that Dr. Lyons "diagnosed cognitive functioning in the 'extremely low' category ...." [R 20] It is ludicrous for the ALJ to assert that Dr. Lyons gave no indication as to the validity of the plaintiff's I.Q. scores while noting that he diagnosed the plaintiff as functioning in the "extremely low" category. If Dr. Lyons did not believe the tests were valid, he would not have made that diagnosis and there is nothing in his report that even hints that he did not believe the scores to be valid. The ALJ's finding that the plaintiff's I.Q. scores were not valid was based solely on his own unsupported opinions as to the plaintiff's mental capacity. The ALJ, therefore, "succumbed to the [forbidden] temptation to play doctor and make [his] own independent medical findings." *Rohan v. Chater,* 98 F.3d 966, 970 (7th Cir.1996). If the ALJ was in doubt as to the validity of the plaintiff's I.Q. scores, he should have sought clarification of the test results from Dr. Lyons, or ordered additional testing. Because of the Commissioner's duty to develop the medical record fully and fairly "it is reversible error for an ALJ not to order a consultative examination when such an evaluation is necessary for him to make an informed decision." *Holladay v. Bowen,* 848 F.2d 1206, 1209 (11th Cir.1988)(quoting *Reeves v. Heckler,* 734 F.2d 519, 522 n. 1 (11th Cir.1984)) (internal quotation marks omitted). The ALJ's comments concerning the plaintiff's functional abilities are irrelevant to the issue of whether the Listing is met. Once a claimant is found to suffer from a Listed impairment, vocational factors are irrelevant. *Ambers v. Heckler,* 736 F.2d 1467 (11th Cir.1984)(fact that claimant could return to her past work held irrelevant once she met one of the Listings). Therefore, the ALJ's reason for refusing to credit the plaintiff's

I.Q. scores is not supported by substantial evidence and she meets the first part of Listing 12.05C.

■ When considering whether the plaintiff has a physical or mental impairment imposing significant work-related limitation of function in addition to a low I.Q. score, the Commissioner must consider the plaintiff's impairments in combination. *Davis* 985 F.2d at 533. The issue of what constitutes "a physical or other mental impairment imposing additional and significant work-related limitation of function" was addressed in *Edwards v. Heckler:*

> An impairment imposes significant limitations when its effect on a claimant's ability to perform "basic work activities" is more than slight or minimal. The question under Listing 12.05C, however, is not whether the impairment is in and of itself disabling, thus, "significant" requires something less than severe within the meaning of § 404.1520(c) [of the Commissioner's Regulations].

755 F.2d 1513, 1515 (11th Cir.1985)(finding that the presence of chronic obstructive lung disease and exercise induced asthma provided a sufficient additional impairment to meet the second prong of Listing 12.05C.). The second part of the Listing, therefore, imposes a less stringent requirement than that imposed by 20 C.F.R. § 404.1520(c), which sets forth the five-step sequential process by which a disability claim is evaluated. Section 404.1520(c) defines "severe impairment" to require that the impairment or combination of impairments significantly limit the claimant's physical or mental ability to do basic work activities. Listing 12.05C only requires a "more than slight or minimal" limitation.

On the present record, it cannot be plausibly asserted that the plaintiff's respiratory disease did not impose a "more than slight or minimal" limitation on the plaintiff's ability to do work related activity prior to December 31, 1996. A finding that the plaintiff did not meet the second prong of 12.05C would not be supported by substantial evidence. Therefore, the plaintiff also has satisfied the second prong of Listing 12.05C.

■ In addition to the above requirements, Listing 12.05C also requires that the retardation be a lifelong condition, which manifested itself before age twenty-two. *Lowery v. Sullivan,* 979 F.2d 835, 837 (11th Cir.1992) At least three circuit courts of appeals have held that in the absence of any evidence of a change in a claimant's IQ, it must be assumed the plaintiff's IQ has remained constant. *Branham v. Heckler,* 775 F.2d 1271, 1274 (4th Cir.1985) ("We must and do assume, therefore, that in the absence of any evidence of a change in plaintiff's intellectual functioning from the time of his back injury to the time of his IQ test, that he had the same or approximately the same IQ [during that time] ...."); *Guzman v. Bowen,* 801 F.2d 273, 275 (7th Cir.1986)(following *Branham* and assuming that in the absence of evidence to the contrary a valid I.Q. score should be assumed to be valid as of the alleged date of onset of disability); *Muncy v. Apfel,* ("[A] person's IQ is presumed to remain stable over time in the absence of any evidence of a change in a claimant's intellectual functioning.")(citing *Branham, Guzman,* and other district court cases). As the court in *Branham* noted: "[T]here may be many reasons why an individual would not have had the opportunity or need to have a formal intelligence quotient test until later in life." 775 F.2d at 1274. In *Lowery,* the court implied that once the claimant has established a valid IQ score meeting the requirement of the appropriate Listing, the burden is on the Commissioner to establish that the claimant's retardation did

not manifest itself before age twenty-two. 979 F.2d at 837 ("Generally, a claimant meets the criteria for presumptive disability under section 12.05(C) when the claimant presents a valid I.Q. score of 60 to 70 inclusive, and evidence of an additional mental or physical impairment that has more than 'minimal effect' on the claimant's ability to perform basic work activities."); 979 F.2d at 838 ("Thus, this court need only decide whether substantial evidence in the record supports the ALJ's finding that Lowery's mental retardation did not manifest itself before age twenty-two."). When the claimant has established a valid IQ score meeting the requirements of Listing 12.05C, the court concludes that the better approach is to place the burden on the Commissioner to show that the claimant's mental retardation did not manifest itself before age twenty-two.

 The record does not indicate the plaintiff had taken previous IQ or other standardized tests. There appear to be no records relative to the plaintiff's mental functioning prior to the age of twenty-two. In short, the record reveals virtually nothing about whether the plaintiff might have been mentally retarded prior to the age of twenty-two and certainly does not support a finding that she was not. Therefore, substantial evidence does not support a finding that the plaintiff's current IQ scores do not represent an accurate assessment of her IQ prior to the age of twenty-two.[4]

## CONCLUSION

The medical evidence of record conclusively establishes that the plaintiff met both Listing 3.02A and Listing 12.05C prior to December 31, 1996. Therefore, the decision of the ALJ is not supported by substantial evidence and will be reversed. An appropriate order will be entered contemporaneously herewith.

## *FINAL ORDER*

In conformity with and pursuant to the memorandum opinion entered contemporaneously herewith, it is

ORDERED, ADJUDGED and DE-CREED that the decision of the Commissioner of the Social Security Administration be and it hereby is REVERSED, and the case is REMANDED to the Commissioner with instructions that the plaintiff be awarded the benefits claimed. It is

FURTHER ORDERED that the Commissioner withhold from payments which he may determine are due plaintiff under this order an amount not to exceed 25 percent of the total amount of disability benefits to which the plaintiff is entitled, pursuant to the provisions of section 206 of the Social Security Act, as amended, 42 U.S.C. § 406(b). The Commissioner is directed to advise the court of the amount withheld so that the matter may be set for final determination of the amount of attorney's fee to be allowed plaintiff's counsel for services rendered in representing plaintiff in this cause.

---

4. The plaintiff's vocational abilities and work history are irrelevant once a valid IQ score is accepted. *Lowery*, 979 F.2d at 837 ("Although the ALJ is allowed some leeway to evaluate other evidence when determining the validity of an I.Q. score, an ALJ may not consider a claimant's age, education, and work experience after the ALJ accepts the I.Q. score as valid and finds that the claimant meets or equals the criteria of a listed impairment.").