**Anthony S. BLANKS, Plaintiff,**

v.

**Jo Anne B. BARNHART, Commissioner of Social Security, Defendant.**

**No. CIV.A. 05–G–0212–S.**

United States District Court, N.D. Alabama, Southern Division.

Nov. 14, 2005.

---

Darryl W. Hunt, Clark & James LLC, Birmingham, AL, for Plaintiff.

Lane H. Woodke, U.S. Attorney's Office, Birmingham, AL, Reginald V. Speegle, Social Security Administration, Office of General Counsel, Atlanta, GA, for Defendant.

### *MEMORANDUM OPINION*

GUIN, District Judge.

The plaintiff, Anthony S. Blanks, brings this action pursuant to the provisions of section 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner of the Social Security Administration (the Commissioner) denying his application for Social Security Benefits. Plaintiff timely pursued and exhausted his administrative remedies available before the Commissioner. Accordingly, this case is now ripe for judicial review under 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g).

### STANDARD OF REVIEW

The sole function of this court is to determine whether the decision of the

Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Bloodsworth v. Heckler,* 703 F.2d 1233, 1239 (11th Cir.1983). To that end this court "must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth,* at 1239 (citations omitted). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Bloodsworth,* at 1239.

## STATUTORY AND REGULATORY FRAMEWORK

In order to qualify for disability benefits and to establish his entitlement for a period of disability, a claimant must be disabled. The Act defines disabled as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months ...." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(i). For the purposes of establishing entitlement to disability benefits, "physical or mental impairment" is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

In determining whether a claimant is disabled, Social Security regulations outline a five-step sequential process. 20 C.F.R. § 404.1520(a)-(f). The Commissioner must determine in sequence:

(1) whether the claimant is currently employed;

(2) whether she has a severe impairment;

(3) whether her impairment meets or equals one listed by the Secretary;

(4) whether the claimant can perform her past work; and

(5) whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala,* 998 F.2d 473, 477 (7th Cir.1993); *accord McDaniel v. Bowen,* 800 F.2d 1026, 1030 (11th Cir.1986). "Once the claimant has satisfied Steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her past work, the burden shifts to the Secretary to show that the claimant can perform some other job." *Pope,* at 477; *accord Foote v. Chater,* 67 F.3d 1553, 1559 (11th Cir.1995).

In the instant case, the ALJ, Robert G Faircloth, determined the plaintiff met the first two tests, but concluded did not suffer from a listed impairment. The ALJ found the plaintiff was able to perform his past relevant work, and accordingly found him not disabled.

## THE STANDARD WHEN THE CLAIMANT TESTIFIES HE SUFFERS FROM DISABLING PAIN

In this circuit, "a three part 'pain standard' [is applied] when a claimant seeks to establish disability through his or her own testimony of pain or other subjective symptoms." *Foote,* at 1560.

The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Foote,* at 1560 (quoting *Holt v. Sullivan,* 921 F.2d 1221, 1223 (11th Cir.1991)). In this circuit medical evidence of pain itself, or of its intensity, is not required.

While both the regulations and the *Hand* standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, *neither requires objective proof of the pain itself.* Thus under both the regulations and the first (objectively identifiable condition) and third (reasonably expected to cause pain alleged) parts of the *Hand* standard *a claimant who can show that his condition could reasonably be expected to give rise to the pain he alleges has established a claim of disability and is not required to produce additional, objective proof of the pain itself.* See 20 CFR §§ 404.1529 and 416.929; *Hale* at 1011.

*Elam v. Railroad Retirement Bd.,* 921 F.2d 1210, 1215 (11th Cir.1991)(parenthetical information omitted)(emphasis added). Furthermore, it must be kept in mind that "[a] claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability." *Foote* at 1561. Therefore, if a claimant testifies to disabling pain and satisfies the three part pain standard, he must be found disabled unless that testimony is properly discredited.

 When the Commissioner fails to credit a claimant's pain testimony, he must articulate reasons for that decision.

It is established in this circuit that if the Secretary fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, then the Secretary, as a matter of law, has accepted that testimony as true. Implicit in this rule is the requirement that such articulation of reasons by the Secretary be supported by substantial evidence.

*Hale v. Bowen,* 831 F.2d 1007, 1012 (11th Cir.1987). Therefore, if the ALJ either fails to articulate reasons for refusing to credit the plaintiff's pain testimony, or if his reasons are not supported by substantial evidence, the pain testimony of the plaintiff must be accepted as true.

## DISCUSSION

The vocational expert (VE) testified that if the plaintiff's testimony about the level and intensity of his pain were credited, the plaintiff would be unable to work. [R 226] The VE also testified that if the medical opinions of the Commissioner's consultant, Dr. Odi, were credited, the plaintiff would be unable to work. Therefore, if the ALJ failed to properly discredit either the plaintiff's pain testimony, or the medical opinions of Dr. Odi, the plaintiff is disabled within the meaning of the Social Security Act.

The ALJ summarized Dr. Odi's report as follows:

Dr. Odi noted that the claimant was not taking any prescription medications, and was only taking Goody's powders for some relief of his pain. The claimant appeared to be in painful distress before the examination. Dr. Odi reported that the claimant possessed no active or passive impaired range of motion in either of his shoulders. He also reported that the claimant expressed marked limitation of flexion of his spine and appeared unable to extend his spine at all. The claimant was reported to have exhibited positive supine leg raising.[1] However, the claimant exhibited no muscle weakness or atrophy in his extremities. The claimant was also reported to possess "some degree of impaired sensation in his lower extremity." An x-ray was performed on his lumbosacral spine and revealed some narrowing of the L4–L5 disc space with evidence of an opacity,

---

1. A positive SLR (Straight Leg Raise test) is recognized by the regulations as a clinically appropriate test for the presence of pain and limitation of motion of the spine. (*See* Listing 1.00(B), ¶ 5)

some scarring and some loss of lumbar lordosis. After conducting the examination, Dr. Odi opined that he believed that at that time, the claimant was disabled. He also opined that with further treatment, the claimant may be in a position to be retrained and be able to resume a more active life style and job situation.

[R 12–13] This summary leaves out the following: "The patient is actually crying due to severity of pain in his back, associated with getting up, getting undressed for examination and sitting on the examining couch." [R 145] Dr. Odi's diagnostic impression was that the plaintiff "is disabled from severe chronic back pain." [R 146] Dr. Odi continues:

The patient is disabled.

I do believe that this patient would benefit from disability because this would enable him to get the kind of medical attention that he needs and also source of income in view of his disabling condition at this time. Once he has been able to receive treatment for his chronic back pain alleviation of his pain, [sic.] *which will probably need repeat surgery, diskectomy and spinal fusion.* [sic.] I do believe that this patient may be in a position to be retrained and be able to resume a more active life style and job situation at that time.

At this time, I do believe that the patient is disabled.

[R 146] (emphasis added). It is clear that Dr. Odi believed the plaintiff's allegations of disabling pain were true and that he suffered from an objective medical condition that could cause such pain.

The ALJ rejected the opinions of Dr. Odi and refused to credit the plaintiff's testimony of disabling pain. Many of the ALJ's articulated reasons for rejecting the plaintiff's allegations of disabling pain are incomprehensible. For example: "The claimant, when asked why he could not work, responded that the pain prevents him from working. The undersigned observes that the claimant reports that he is in great pain 'all the time,' even when not working, yet he asserts that he is unable to work due to being in pain." [R 14] This makes no sense. Is the ALJ saying that someone who is in pain all the time, cannot be prevented from working due to that pain?

Elsewhere the ALJ states: "The claimant's self stated problem is not that he can not perform certain activities, but rather that the performance of said activities cause him great pain." [R 13] Does the ALJ mean to imply that plaintiff can work because he can sometimes endure "great pain" in order to perform certain activities?

The ALJ remarks in his opinion about what he perceives to be an uncertainty by the plaintiff as to whether he was able to work:

Notably, no doctor but Dr. Odi opined that the claimant was disabled. Indeed, during his hearing, even the claimant seemed uncertain as to whether he was unable to work.

[R 15] The ALJ discussed the claimant's allegations of pain earlier in his opinion:

The undersigned asked the claimant if his medication relieved his symptoms enough to enable him to work and the claimant was unsure, responding, "I don't believe so." Later the claimant was asked whether he could work at a job that required some sitting, standing and some use of his arms. The claimant responded, "I just don't think I could do it right now." When asked why he was unsure whether he could work, the claimant explained that pain prevents him from working.

[R 13] A review of the transcript fails to reveal an uncertainty by the claimant as to whether he could work while taking his pain medicine.

ALJ: So the medications help you to be able to do a few things around the house?

CLMT: Just a little something, but it make me so—

ALJ: Um-hum. But not to the extent that you could go out and do a job?

CLMT: I don't believe so.

ALJ: Have you attempted it at all since you filed?

CLMT: Yes, sir, I tried.

\* \* \* \* \* \*

ALJ: Do you think you could do a sitting job if you had one that you could sit or stand and work with your arms and hands?

CLMT: To be honest, Your Honor, the pain on me-

ALJ: Um-hum.

CLMT:—I just don't think I could do it right now and I was a hard worker.

ALJ: Um-hum.

CLMT: That's the reason after I first got injured, I went back to work.

ALJ: Um-hum.

CLMT: I don't want to settle for disability.

ALJ: Um-hum.

CLMT: You know, other people had to convince me to go on because I was a hard worker.

ALJ: Um-hum.

CLMT: And you know, to lose my family because I wasn't bringing enough income and all, you know, no man wants to do that.

[R 202–204] ALJ's opinion takes the plaintiff to task for responding that he doesn't "think" he could work when asked whether he could work. However the transcript reveals that the question by the ALJ specifically asked "[d]o you *think* you could to a sitting job . . . ." (emphasis added). The plaintiff can hardly be faulted for answering the question as it was asked. In any event, the transcript makes clear that the plaintiff was not unsure about his ability to work, and had even made an unsuccessful attempt at work.

The ALJ attempted to explain his reason for rejecting Dr. Odi's opinion about the plaintiff's pain and it's impact on his ability to work:

> Given that Dr. Odi's opinion from a single examination was that the claimant was "currently disabled" at the time of the examination, and would potentially be able to be retrained and resume a more active lifestyle and job situation in the future; and due to Dr. Odi's rather limited medical findings from clinical observations, his opinion regarding the claimant's disability is afforded less weight.

[R 15] This is an outright misrepresentation of Dr. Odi's report. It implies that Dr. Odi viewed the plaintiff's disability due to pain as temporary in nature. As noted above, Dr. Odi believed the plaintiff might have a chance at working in the future, only after he had received treatment for his back problem, which Dr. Odi believed would include surgery. The need for surgery was also left out of the ALJ's summary of Dr. Odi's report quoted above. Such a glaring omission suggests the ALJ's opinion was a result driven recitation of only those facts supporting a finding the plaintiff was not disabled.

Likewise, the ALJ's characterization of Dr. Odi's "rather limited medical findings from clinical observations" is a distortion of Dr. Odi's report, even as that report was summarized by the ALJ. Dr. Odi found "marked limitation of flexion of his spine and appeared unable to extend his spine at all." Dr. Odi noted a "positive supine leg raising." [2] Dr. Odi found "some

---

2. Dr. Odi's report of the SLR test is more detailed: "With patient in a supine position,

attempts to raise his left lower extremity

degree of impaired sensation in his lower extremity." Dr. Odi noted that an x-ray "revealed some narrowing of the L4–L5 disc space with evidence of an opacity, some scarring and some loss of lumbar lordosis." These do not constitute "limited medical findings." The findings strongly support Dr. Odi's conclusion that the plaintiff suffered from disabling pain.

The ALJ's opinion contains the following: "There simply is no medical evidence of record to support disabling pain in this thirty-six year old claimant." [R 14] To the contrary, the Commissioner's own consultant, Dr. Odi provided abundant medical evidence to support the plaintiff's allegations of disabling pain. In addition, other medical evidence strongly supports the plaintiff. An MRI performed November 15, 2002, showed "severe discogenic

disease and probably a bulging annulus[3] including disc material bulging into both neural foramina.[4] However there is not nerve root compromise and no finding favoring recurrent HNP.[5]" [R 158] A December 6, 2002, referral form for an anesthesia pain block notes the MRI revealed a bulging disc and chronic inflamation, with changes at the L4–5 level. [R 156] A treatment note from May 12, 2003, reveals a positive SLR and a diagnostic impression of chronic lower back pain secondary to back surgeries and possible bulging disc. [R 165] The treatment note indicates the plaintiff was switched from Mobic to Tylenol #3, Flexeril and Neurontin.[6] [R 165]

 From the above it is clear that the ALJ's decision not to credit the report of the Commissioner's own doctor is not

causes severe pain in his back. I could lift his left lower extremity straight leg raise to about 40 degrees with marked pain and could not go beyond that because of pain. The patient is able, however, to flex his hip with the knee bent to about 100 degrees with severe pain, same on the right side." [R 145]

3. The annulus is part of the intervertebral disc:

Intervertebral discs are composed of an annulus fibrosus and a nucleus pulposus.

Axial (Overhead) View of Intervertebral Disc
Annulus Fibrosus
Nucleus Pulposus

The annulus fibrosus is a strong radial tirelike structure made up of lamellae; concentric sheets of collagen fibers connected to the vertebral end plates. The sheets are orientated at various angles. The annulus fibrosus encloses the nucleus pulposus. http://www.spineuniverse.com/ displayarticle.php/article1267.html

4. The neural, or intervertebral foramen is "the passage formed by the inferior and superior notches on the pedicles of adjacent vertebrae; it transmits a spinal nerve and vessels." *Dorland's Illustrated Medical Dictionary* 649 (28th Ed.1994).

5. Herniation of nucleus pulposus—rupture or prolapse of the nucleus pulposus into the spinal canal. *Dorland's Illustrated Medical Dictionary* 758 (27th Edition).

6. This treatment note does indicate the plaintiff "refuses" surgery, but also notes that the "most recent surgeries have not helped him." The ALJ comments upon the plaintiff's refusal of additional surgery, but does not base his decision on a refusal to follow prescribed treatment. Moreover, the treatment notes do not reveal that surgery has definitely been recommended. In light of the plaintiff's history of unsuccessful back surgeries, he can

supported by substantial evidence. Dr. Odi's opinions are well supported and are not contradicted by other doctors. The report of Dr. Odi strongly supports the plaintiff's allegations of disabling pain. A reasonable fact finder, based upon the entire record, would not discredit the plaintiff's testimony for the reasons articulated by the ALJ.[7] Therefore, the plaintiff's allegations of disabling pain must be accepted as true, and based upon the VE's testimony, the plaintiff is disabled.

■ This is a case where "the [Commissioner] has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt." *Davis v. Shalala,* 985 F.2d 528, 534 (11th Cir.1993). In such a case the action should be reversed and remanded with instructions that the plaintiff be awarded the benefits claimed. *Id.*

An appropriate order will be entered contemporaneously herewith.

### FINAL ORDER

In conformity with and pursuant to the memorandum opinion entered contemporaneously herewith, it is

ORDERED, ADJUDGED and DECREED that the decision of the Commissioner of the Social Security Administration is hereby REVERSED, and the case is REMANDED to the Commissioner with instructions that the plaintiff be awarded the benefits claimed. It is

FURTHER ORDERED that the Commissioner withhold from payments that are determined to be due the plaintiff under this order an amount not to exceed 25 percent of the total amount of disability benefits to which the plaintiff is entitled,

pursuant to the provisions of 42 U.S.C. § 406(b). The Commissioner is directed to advise the court of the amount withheld so that the matter may be set for final determination of the amount of attorney's fee to be allowed plaintiff's counsel for services rendered in representing plaintiff in this cause.

It is further ORDERED pursuant to Rule 54(d)(2)(B) of the Federal Rules of Civil Procedure, that plaintiff's attorney is hereby granted an extension of time in which to file a petition for authorization of attorney's fees under 42 U.S.C. § 406(b) until thirty (30) days subsequent to the receipt of a notice of award of benefits from the Social Security Administration. *This order does not extend the time limits for filing a motion for attorney's fees under the Equal Access to Justice Act.*

---

hardly be faulted for a reluctance to undergo additional surgery.

7. "Substantiality of the evidence must be based upon the record taken as a whole ...." *Sias v. Secretary of Health and Human Services,* 861 F.2d 475, 479 n. 1, (6th Cir.1988)