[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
DEC 1, 2008
THOMAS K. KAHN
CLERK

_____

No. 08-12853
Non-Argument Calendar

_____

D. C. Docket No. 06-00210-CV-HL-5

DOROTHY MONCRIEF,

Plaintiff-Appellant,

versus

MICHAEL J. ASTRUE,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Georgia

_____

**(December 1, 2008)**

Before BLACK, BARKETT and KRAVITCH, Circuit Judges.

PER CURIAM:

In 2002, Dorothy Moncrief applied for Disability Insurance Benefits (DIB)

and Supplemental Security Income (SSI), alleging a disability onset date of August 15, 2001. Following a hearing, the Administrative Law Judge (ALJ) found that Moncrief became disabled on June 19, 2003, over five months after her Date Last Insured, and not on her alleged onset date.[1] Accordingly, the ALJ granted Moncrief's application for SSI, but denied her application for DIB. This decision was adopted by the Commissioner and affirmed by the district court.

Moncrief appeals the district court's order affirming the Commissioner's denial of DIB, asserting that the ALJ's finding that prior to June 19, 2003, she was capable of performing "light work" is unsupported by the evidence. Specifically, she asserts that the ALJ (1) incorrectly found she stopped working on August 15, 2001 when, in fact, she had stopped working more than four years before that date, (2) ignored evidence of cardiac and respiratory problems occurring before the Date Last Insured, and (3) ignored a medical report issued prior to the Date Last Insured by Dr. Hutchings, which indicated that her edema and "recurrent purulent draining cyst" made her incapable of prolonged standing.[2]

---

[1] Unlike SSI, which has no insured status requirement, a claimant must demonstrate disability on or before the last date on which she was insured in order to be eligible for DIB. Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005). Moncrief's Date Last Insured was December 31, 2002; therefore, the ALJ's finding that she was not disabled until June 19, 2003 makes her ineligible for DIB.

[2] Moncrief also argues for the first time on appeal (1) that the ALJ should have called for testimony from a medical expert and (2) that the ALJ failed to consider the impairments in combination as is required for a determination of disability. Because Moncrief did not raise

We review the Commissioner's factual findings with deference and legal conclusions de novo. Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001). We treat the ALJ's decision as the Commissioner's final decision when, as here, the ALJ denies benefits and the Appeals Council denies review. Id. We do not reweigh evidence or substitute our judgment for that of the Commissioner, but instead review the entire record to determine if the decision reached is reasonable and supported by substantial evidence. Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Doughty, 245 F.3d at 1278. A "mere scintilla" of evidence does not suffice. Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998).

The claimant bears the burden of proving that she is disabled and the date upon which she became disabled. Jones, 190 F.3d at 1228. She must satisfy this burden by furnishing medical and other evidence establishing a severe impairment or combination of impairments. Id. "An impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities," 20 C.F.R. § 404.1521(a), while a

these arguments before the district court, we decline to consider them. Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999) (declining to consider an issue presented for the first time on appeal in a social security case).

3

severe impairment causes more than "a minimal limitation on a claimant's ability to function," Davis v. Shalala, 985 F.2d 528, 532 (11th Cir. 1993). A claimant's residual functional capacity (RFC) is "based upon all the relevant evidence, of a claimant's remaining ability to do work despite his impairments." Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). The disability onset date is "the first day an individual is disabled as defined in the Act and the regulations." SSR 83-20. Although a claimant's alleged onset date is the starting point for determining the disability onset date, the ALJ need not adopt that date if it is unsupported by the medical evidence. See Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005).

In considering the claimant's evidence, the ALJ must "carefully weigh evidence, giving individualized consideration to each claim that comes before him." Miles v. Chater, 84 F.3d 1397, 1401 (11th Cir. 1996). The ALJ has a duty to make clear the weight accorded to each item of evidence and the reasons for his decision in order to enable a reviewing court to determine whether the decision was based on substantial evidence. Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981). However, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision . . . is not a broad rejection which is 'not enough to enable this Court to conclude that the ALJ

4

considered [the claimant's] medical conditions as a whole.'" Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005) (quoting Foote v. Chater, 67 F.3d 1553, 1561 (11th Cir. 1995)).

For the reasons stated herein, we conclude that substantial evidence supports the Commissioner's finding that the disability onset date was June 19, 2003,[3] but that prior to June 19, 2003, Moncrief retained a residual functional capacity to perform a wide range of light work.[4] Contrary to Moncrief's arguments on appeal, a review of the record shows that the ALJ properly considered the evidence before him, including all of the medical evidence.

According to the medical evidence cited by the ALJ, Moncrief suffered from obesity, depression, shortness of breath, sleep apnea, an irregular heartbeat, and edema in 2001 and, in August 2002, she had an echocardiograph which indicated mild heart failure. Prior to 2003, however, Moncrief's treating physicians had not placed any restriction on her ability to perform basic work and there was no evidence that she was receiving treatment or medication for her obesity, shortness

---

[3] On June 19, 2003, Moncrief was diagnosed with atrial fibrillation and prescribed Courmadin and Toprol. Based on this evidence, the ALJ found that Moncrief's was disabled due to her combination of obesity, asthma, and cardiac anomaly as of June 19, 2003.

[4] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" as well as "a good deal of walking or standing, or . . . sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b).

of breath, sleep apnea, depression, or any of her pulmonary limitations. Accordingly, the ALJ did not err in finding that these impairments did not constitute disability.  See Moore, 405 F.3d at 1212 (upholding ALJ's determination that orthopedic problems were not disabling where medical testimony indicated that they could be easily treated with "high-top shoes and over-the-counter medications").

The ALJ also noted that the medical evidence showed that Moncrief was treated throughout 2002 for a cyst and draining wound on her left foot.  All of these impairments were taken into consideration by the RFC assessments conducted in January and May 2003, which determined that Moncrief's complaints of pain were only partially credible and that she was able to sit, stand, and walk for six hours a day.

Moncrief argues that the ALJ erred by failing to consider the December 2002 report of Dr. Hutchings, which stated that her edema and the draining wound on her foot prevented her from prolonged standing.  Dr. Hutchings was a consulting physician and his findings were consistent with the medical evidence; therefore, the ALJ was required to give his opinion great weight.  20 C.F.R. § 404.1527(f)(2)(i).  The ALJ's decision, however, shows that he did consider the limitations caused by both Moncrief's edema and draining wound, even though he

did not explicitly cite Dr. Hutchings' report. In posing a hypothetical to the vocational expert (VE), the ALJ described a person with Moncrief's limitations who required breaks and who "would need to change positions at will," presumably to accommodate her inability to remain still for long periods. Based on these requirements, the VE confirmed that such a claimant could perform light work and that jobs existed in the national economy which could accommodate these limitations. Notably, the VE also testified that if a person with Moncrief's limitations required additional breaks, there would not be a job available to her. There is no evidence in the record, however, to establish that Moncrief would require additional breaks. Thus, contrary to Moncrief's argument, the ALJ properly considered the evidence in the record.

Because the record shows that the ALJ did consider the medical evidence before him and substantial evidence supports his decision, we find that Moncrief's argument that the ALJ erred by "ignoring" the medical evidence of her edema, cyst and draining wound, and pulmonary limitations is without merit. See Dyer, 395 F.3d at 1212.

A review of the record does support Moncrief's assertion that the ALJ was confused about the date upon which Moncrief stopped working: at different times in the hearing, the ALJ acknowledged that Moncrief last worked in 1997, but his

written decision states that she "quit work in August 2001." Nevertheless, we agree with the district court's conclusion that the error was harmless. The ALJ's decision that Moncrief was not disabled prior to June 19, 2003, was not solely based on the date upon which she stopped working, but on all of the evidence of record, including the objective medical evidence discussed above. Furthermore, by her own testimony, Moncrief was able to handle her own activities of daily living and could eat out and visit friends at the time of her alleged onset date. She also testified that her condition was better in 2001 than it was at the time of the hearing. Accordingly, based upon the record as a whole, substantial evidence supports the ALJ's findings, regardless of the date upon which Moncrief stopped working.

For these reasons, we **AFFIRM** the Commissioner's denial of Disability Insurance Benefits.