Jervine JOHNSON, Plaintiff,

v.

Jo Anne B. BARNHART, Commissioner of Social Security, Defendant.

No. 602CV62ORLJGG.

United States District Court, M.D. Florida, Orlando Division.

Oct. 24, 2002.

---

Juan C. Gautier, Orlando, FL, for plaintiff.

Susan Roark Waldron, U.S. Attorney's Office, Middle District of Florida, Tampa, FL, for defendant.

## ORDER

GLAZEBROOK, United States Magistrate Judge.

Plaintiff appeals to the district court from a final decision of the Commissioner of Social Security [the "Commissioner"] denying her claim for a period of disability, disability insurance benefits and Supplemental Security Income (SSI) benefits. *See* Docket (Doc.) No. 1. For the reasons set forth below, the Commissioner's decision is **AFFIRMED**.

## I. *PROCEDURAL HISTORY*

On December 30, 1999, Plaintiff filed her claim for disability and SSI benefits, claiming disability as of March 15, 1995.[1] R. 61–63, 238–39. On March 22, 2001, the Honorable Ruben O. Figueroa, Administrative Law Judge ["ALJ"], held a twenty-two minute hearing on Plaintiff's claim in Orlando, Florida. R. 34–47. Plaintiff was represented by a non-attorney representative, Janet F. White at the hearing. R. 34. The ALJ heard testimony by Plaintiff.

On June 13, 2001, the ALJ issued his decision that Plaintiff was not entitled to disability and disability insurance benefits. R. 17–25. Following his review of the medical and other record evidence, the ALJ found that Plaintiff retained the residual functional capacity (RFC) to perform the full range of sedentary work. R. 24, Finding 12. Based upon this RFC, and Plaintiff's age, education, and past work experience, the ALJ found that the Medi-

1. Although Plaintiff alleged a March 15, 1995 date of onset, the ALJ considered Plaintiff's claim as though she had alleged a February 28, 1998 date of onset because a prior application was denied by an ALJ on February 27, 1998. Because the Appeals Council denied review of the February 1998 ALJ decision and Plaintiff did not further appeal, the prior ALJ decision was binding through February 27, 1998. R. 17.

cal–Vocational Guidelines (the grids) directed a finding of "not disabled." R. 24, Finding 13. On November 19, 2001, the Appeals Council denied review. R. 9–11. On December 21, 2001, the Appeals Council vacated its November 2001 denial and issued a new denial of review.[2] R. 6–8.

On January 18, 2002, Plaintiff timely appealed the Appeals Council's decision to deny review to the United States District Court. Doc. No. 1. On August 16, 2002, Plaintiff filed a memorandum of law in support of her appeal of the denial of review. Doc. No. 16. On September 26, 2002, the Commissioner filed a memorandum in support of her decision that Plaintiff was not disabled. Doc. No. 18. The appeal is ripe for determination.

## II. *THE PARTIES' POSITIONS*

Plaintiff assigns one error to the Commissioner. As stated by Plaintiff, it is as follows: "the Commissioner failed to carry its burden that Plaintiff could perform alternative work in the national economy. The testimony of a vocational expert should have been elicited for this determination." Doc. 17 at 12. In Plaintiff's argument, however, she raises a myriad of other issues. First, she contends that the ALJ erred by finding her capable of performing sedentary work after determining that she could not do prolonged walking or standing. Second, she asserts that Dr. Buchoff assigned manipulative limitations, which would have precluded the performance of a full range of sedentary or light work. However, Plaintiff does not claim that the ALJ erred by failing to credit Dr. Buchoff's assigned limitations. Third, Plaintiff claims that the ALJ erred in his pain and credibility analysis in that he did not specifically find her pain was a non-exertional impairment. In footnotes,

Plaintiff raises (1) that the ALJ did not specify the weight accorded to Dr. Godleski's opinion; and states (2) that the ALJ discredited Plaintiff's subjective complaints because she routinely walked to a friend's house and attended church once a week, implying that such disregard was improper.

The Commissioner argues that substantial evidence supports her decision to deny disability. Doc. No. 18. She argues that the ALJ properly applied the grids, in light of the fact that Plaintiff's non-exertional impairments did not preclude a wide range of sedentary work. She further asserts that the evidence did not reflect significant manipulative limitations precluding sedentary work. The Commissioner contends that the ALJ was not required to specifically state whether Plaintiff's pain was an "exertional" or "nonexertional" impairment, but was required only to consider the related restrictions, which he did. Lastly, the Commissioner asserts that the ALJ did not err in considering Plaintiff's daily activities, among other factors, when assessing her credibility.

## III. *THE STANDARD OF REVIEW*

### A. *Affirmance*

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater,* 67 F.3d 1553, 1560 (11th Cir.1995), *citing Walden v. Schweiker,* 672 F.2d 835, 838 (11th Cir.1982) and *Richardson v. Pe-*

---

**2.** The Appeals Council vacated its prior denial in order to consider new evidence. After considering the evidence, the Appeals Council

determined that it provided no basis for changing the ALJ's decision, and issued a new denial of review. R. 6.

*rales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *accord, Edwards v. Sullivan*, 937 F.2d 580, 584 n. 3 (11th Cir.1991).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards*, 937 F.2d at 584 n. 3; *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir.1992) (court must scrutinize the entire record to determine reasonableness of factual findings); *Parker v. Bowen*, 793 F.2d 1177 (11th Cir.1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

### B. *Reversal and Remand*

■ Congress has empowered the district court to reverse the decision of the Commissioner without remanding the cause. 42. U.S.C. § 405(g)(Sentence Four). The district court will reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't of Health and Human Servs.*, 21 F.3d 1064, 1066 (11th Cir.1994); *accord Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir.1991); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir.1990). This Court may reverse the decision of the Commissioner and enter an order awarding disability benefits where the Commissioner has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any

doubt. *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir.1993); *accord, Bowen v. Heckler*, 748 F.2d 629, 631, 636—37 (11th Cir.1984).

The district court may remand a case to the Commissioner for a rehearing under sentence four of 42 U.S.C. § 405(g); under sentence six of 42 U.S.C. § 405(g); or under both sentences. *Jackson v. Chater*, 99 F.3d 1086, 1089—92, 1095, 1098 (11th Cir.1996). To remand under sentence four, the district court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim. *Jackson*, 99 F.3d at 1090—91 (remand appropriate where ALJ failed to develop a full and fair record of claimant's residual functional capacity); *accord Brenem v. Harris*, 621 F.2d 688, 690 (5th Cir.1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

Where the district court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow him to explain the basis for his decision. *Falcon v. Heckler*, 732 F.2d 827, 829—30 (11th Cir.1984) (remand was appropriate to allow ALJ to explain his basis for determining that claimant's depression did not significantly affect her ability to work) (treating psychologist acknowledged that claimant had improved in response to treatment and could work in a supportive, non-competitive, tailor-made work environment). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. *Diorio v. Heckler*, 721 F.2d 726, 729 (11th Cir.1983) (necessary for ALJ on remand to consider psychiatric report tendered to Appeals Council); *Reeves v. Heckler*, 734 F.2d 519, 522 n. 1 (11th Cir. 1984) (ALJ should consider on remand the

need for orthopedic evaluation). After a sentence-four remand, the district court enters a final and appealable judgment immediately, and then loses jurisdiction. *Jackson,* 99 F.3d at 1089, 1095.

In contrast, sentence six of 42 U.S.C. § 405(g) provides:

The court ... may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding;

42 U.S.C. § 405(g). To remand under sentence six, the claimant must establish: 1.) that there is new, non-cumulative evidence; 2.) that the evidence is material—relevant and probative so that there is a reasonable possibility that it would change the administrative result; and 3.) there is good cause for failure to submit the evidence at the administrative level. *See Jackson,* 99 F.3d at 1090—92; *Cannon v. Bowen,* 858 F.2d 1541, 1546 (11th Cir.1988); *Smith v. Bowen,* 792 F.2d 1547, 1550 (11th Cir.1986); *Caulder v. Bowen,* 791 F.2d 872, 877 (11th Cir.1986); *see also Keeton,* 21 F.3d at 1068.

A sentence-six remand may be warranted even in the absence of an error by the Commissioner if new, material evidence becomes available to the claimant. *Jackson,* 99 F.3d at 1095. With a sentence-six remand, the parties must return to the district court after remand to file modified findings of fact. *Jackson,* 99 F.3d at 1095. The district court retains jurisdiction pending remand, and does not enter a final

judgment until after the completion of remand proceedings.[3] *Id.*

## IV. *THE LAW*

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(I), 423(d)(1); 20 C.F.R. § 404.1505. The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505—404.1511.

### A. *Treating Physicians*

■ Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. *See Lewis v. Callahan,* 125 F.3d 1436, 1439—1441 (11th Cir.1997); *Edwards,* 937 F.2d at 583; *Sabo v. Comm'r of Soc. Sec.,* 955 F.Supp. 1456, 1462 (M.D.Fla.1996); 20 C.F.R. § 404.1527(d). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2). The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory. *See Edwards,* 937 F.2d

---

**3.** The time for filing an application for attorneys fees under the Equal Access to Justice Act, 28 U.S.C. § 2412 ["EAJA"] differs in remands under sentence four and sentence six. *Jackson,* 99 F.3d at 1089, 1095 n. 4 and surrounding text. In a sentence-four remand,

the EAJA application must be filed after the entry of judgment before the district court loses jurisdiction. *Id.* In a sentence-six remand, the time runs from the post-remand entry-of-judgment date in the district court. *Id.*

580 (ALJ properly discounted treating physician's report where the physician was unsure of the accuracy of his findings and statements).

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Wheeler v. Heckler,* 784 F.2d 1073, 1075 (11th Cir.1986); *see also Schnorr v. Bowen,* 816 F.2d 578, 582 (11th Cir.1987). When a treating physician's opinion does not warrant *controlling* weight, the ALJ must nevertheless weigh the medical opinion based on the 1.) length of the treatment relationship and the frequency of examination; 2.) the nature and extent of the treatment relationship; 3.) the medical evidence supporting the opinion; 4.) consistency with the record a whole; 5.) specialization in the medical issues at issue; 6.) other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(d). However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. *See Wilson v. Heckler,* 734 F.2d 513, 518 (11th Cir.1984); *see also* 20 C.F.R. § 404.1527(d)(2).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled. However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. 20 C.F.R. § 404.1527(e). The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether the claimant meets a listed impairment, a claimant's residual functional capacity (*see* 20 C.F.R. §§ 404.1545 and 404.1546), or the application of vocational factors because that ultimate determina-

tion is the providence of the Commissioner. 20 C.F.R. § 404.1527(e).

### B. *Developing the Record*

■ The ALJ has a duty to fully and fairly develop the record. *Welch v. Bowen,* 854 F.2d 436, 438 (11th Cir.1988); *Cowart v. Schweiker,* 662 F.2d 731, 735—36 (11th Cir.1981). The Commissioner also has a duty to notify a claimant of the statutory right to retained counsel at the social security hearing, and to solicit a knowing and voluntary waiver of that right. *See* 42 U.S.C. § 406; *Cowart,* 662 F.2d at 734. The obligation to fully and fairly develop the record exists if a claimant has waived the right to retained counsel, and even if the claimant is represented by counsel. *See Cowart,* 662 F.2d at 735—36. However, where an unrepresented claimant has not waived the right to retained counsel, the ALJ's obligation to develop a full and fair record rises to a special duty. *See Brown v. Shalala,* 44 F.3d 931, 934—35 (11th Cir.1995), *citing Smith v. Schweiker,* 677 F.2d 826, 829 (11th Cir.1982). This special duty requires the ALJ to "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts" and to be "especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited." *Cowart,* 662 F.2d at 735 (citations omitted).

### C. *Medical Tests and Examinations*

■ The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled. 20 C.F.R. § 416.917; *see also Conley v. Bowen,* 781 F.2d 143, 146 (8th Cir.1986). In fulfilling his duty to conduct a full and fair inquiry, the ALJ is not required to order a consultative examina-

tion unless the record establishes that such an examination is necessary to enable the ALJ to render an informed decision. *Holladay v. Bowen,* 848 F.2d 1206, 1209 (11th Cir.1988); *Reeves v. Heckler,* 734 F.2d at 522 n. 1 (failure to order such an evaluation may be reversible error). Under the regulations, however, the ALJ may determine that a consultative examination or other medical tests are necessary. 20 C.F.R. § 416.917 (1998).

### D. The Five Step Evaluation

The ALJ must follow five steps in evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, she is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f).

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). The ALJ must evaluate a disability claimant as a whole person, and not in the abstract as having several hypothetical and isolated illnesses. *Davis,* 985 F.2d at 534. Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. *See id.*

The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. *Carnes v. Sullivan,* 936 F.2d 1215, 1218 (11th Cir.1991). The claimant must prove disability on or before the last day of her insured status for the purposes of disability benefits. *Ware v. Schweiker,* 651 F.2d 408, 411 (5th Cir.1981); *Demandre v. Califano,* 591 F.2d 1088, 1090 (5th Cir.1979); 42 U.S.C. §§ 416(i)(3); 423(a), (c). If a claimant becomes disabled after she has lost insured status, her claim for disability benefits must be denied despite her disability. *See, e. g., Kirkland v. Weinberger,* 480 F.2d 46 (5th Cir.1973); *Chance v. Califano,* 574 F.2d 274 (5th Cir.1978).

### E. Other Work

Once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy. *Foote,* 67 F.3d at 1559. In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a claimant. *Id.,* 67 F.3d at 1558; *Allen v. Sullivan,* 880 F.2d 1200, 1201 (11th Cir.1989). This burden may sometimes be met through exclusive reliance on the Medical–Vocational Guidelines [the "grids"]. *Foote,* 67 F.3d at 1558. Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors. 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(e); *Foote,* 67 F.3d at 1559; *Heckler v. Campbell,* 461 U.S. 458, 103 S.Ct.

1952, 76 L.Ed.2d 66 (1983) (exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements).

■ Exclusive reliance is not appropriate "either when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills." *Walker v. Bowen*, 826 F.2d 996, 1002–03 (11th Cir.1987). In almost all of such cases, the Commissioner's burden can be met only through the use of a vocational expert. *Foote*, 67 F.3d at 1559; *Chester v. Bowen*, 792 F.2d 129, 132 (11th Cir.1986); *see also MacGregor v. Bowen*, 786 F.2d 1050, 1054 (11th Cir.1986) (when non-exertional limitations are alleged, the preferred method of demonstrating that the claimant can perform specific work is through the testimony of a vocational expert). It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy. *See Allen*, 880 F.2d at 1202; *Ferguson v. Schweiker*, 641 F.2d 243, 248 (5th Cir.1981). In any event, the ALJ must make a specific finding as to whether the non-exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations. *Foote*, 67 F.3d at 1559.

### 1. *Pain*

■ Pain is a non-exertional impairment. *Foote*, 67 F.3d at 1559; *Walker*, 826 F.2d at 1003. Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment which could reasonably be expected to produce the pain or symptoms alleged. 42 U.S.C. § 423(d)(5)(A). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the Eleventh Circuit's three-part "pain standard":

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Foote*, 67 F.3d at 1560, *quoting Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). Pain alone can be disabling, even when its existence is unsupported by objective evidence, *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir.1992), although an individual's statement as to pain is not, by itself, conclusive of disability. 42 U.S.C. § 423(d)(5)(A).

### 2. *Credibility*

■ Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Foote*, 67 F.3d at 1561–62; *Jones v. Dep't of Health and Human Servs.*, 941 F.2d 1529, 1532 (11th Cir.1991) (articulated reasons must be based on substantial evidence). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. *See Hale v. Bowen*, 831 F.2d 1007,

1012 (11th Cir.1987); *MacGregor*, 786 F.2d at 1054. As a matter of law, the failure to articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true. *Foote*, 67 F.3d at 1561–62; *Cannon*, 858 F.2d at 1545.

A lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case. *See Smallwood v. Schweiker*, 681 F.2d 1349, 1352 (11th Cir.1982). If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding." *Foote*, 67 F.3d at 1562 (quoting *Tieniber v. Heckler*, 720 F.2d 1251, 1255 (11th Cir.1983)) (although no explicit finding as to credibility is required, the implication must be obvious to the reviewing court).

## V. APPLICATION AND ANALYSIS

### A. The Facts

Born on April 1, 1952, Plaintiff was forty-nine at the time of the ALJ's decision. R. 35, 61. She had an eleventh grade education. R. 36, 73. Plaintiff claimed that she was unable to work since March 13, 1995, due to fibromyalgia, herniated disk in neck, tendinitis left shoulder, back problem, and mild heart problem. R. 67. These problems were associated with pain in Plaintiff's neck, back, shoulder and chest, shortness of breath, fatigue, and difficulty getting up and down. R. 67. Plaintiff had past relevant work as a factory worker and a factory "floor person." R. 37–38, 80–81.

Plaintiff's medical history is set forth in detail in the ALJ's decision. The following

summary of Plaintiff's medical history is limited to that directly relevant to this appeal, i.e., the record of treating physicians Peter J. Godleski, M.D., and Howard S. Buchoff, M.D.

Dr. Godleski, an orthopedic surgeon, treated Plaintiff from July 1997 through January 1998 for complaints of headaches, blurred vision, ear pain, neck pain radiating to the left shoulder, arm and hand; intermittent numbness in the left hand; thoracic pain; and lumbar pain radiating to the left buttocks, thigh and below the knee. R. 126–31. Objective findings on exam included tenderness in the cervical and lumbar spine; painful range of cervical, lumbar, and left shoulder motion; and a positive straight leg raise on the left. R. 127. MRI's revealed bulging disks at T3–4 and C6–7, herniated disk at C4–5, and rotator cuff tendinitis of the left shoulder. R.127, 130–31. Final diagnosis was cervical sprain or strain with herniation at C4–5 and bulge at C6–7, lumbosacral sprain or strain, and thoracic sprain or strain with bulging at T3–4. R. 128. Dr. Godleski reported that Plaintiff's restrictions were no repetitive bending, no lifting greater than 15 pounds at one time and 10 pounds on a regular basis, no loading of weight on the head or neck and no repetitive bending of the head or neck. R. 128.

From November 2000 through March 2001, Plaintiff obtained treatment with Dr. Buchoff, a rheumatologist, for myalgias and arthralgias, most likely fibromyalgia. R. 213–24, 231–37. Dr. Buchoff documented Plaintiff's complaints of moderate, generalized pain in muscles and joints, fatigue and sleep disturbance. *E.g.*, R. 213, 215. Examinations revealed questionable mild weakness in arms and legs. R. 213. Laboratory testing documented elevated CPK [4] levels, while EMG/nerve conduction

---

**4.** Creatine phosphokinase (CPK; an enzyme found predominantly in the heart, brain, and

skeletal muscle). When the total CPK level is

studies suggested myopathy and neuropathy and x-rays revealed moderate degenerative changes of the cervical spine. R. 213, 221, 222, 231, 233, 234. Dr. Buchoff completed a Medical Assessment of Ability to do Work–Related Activities (Physical). R. 235–37. Assigned limits included that Plaintiff could lift and carry only one pound frequently or up to six pounds occasionally; stand/walk for ten minutes without interruption or one hour in an eight-hour day; sit for 15 minutes at a time or one and one-half hours in an eight-hour work day. R. 235–36. Plaintiff could never climb, and other postural activities were limited to an occasional basis. R. 236. Reaching, handling, feeling and pushing/pulling were affected by Plaintiff's impairments. R. 236. Dr. Buchoff assigned environmental restrictions as well. R. 237.

### B. *The Analysis*

The ALJ properly evaluated Plaintiff's RFC, based upon a thorough and correct evaluation of the evidence before him, including treating physician opinions and Plaintiff's credibility. Based upon that RFC, the ALJ correctly applied the grids to determine that Plaintiff could perform work existing in significant numbers. The ALJ's decision is supported by substantial evidence and is decided by the proper legal standards.

Residual functional capacity is an assessment based on all relevant evidence of a claimant's remaining ability to do work despite her impairments. 20 C.F.R. § 404.1545(a); *Lewis*, 125 F.3d at 1440. The focus of this assessment is on the doctor's evaluation of the claimant's condition and the medical consequences. *Id.* In evaluating a claimant's residual functional capacity, the ALJ is obliged to consider all of the claimant's impairments, including subjective symptoms such as pain.

■ The RFC for a full range of sedentary work is supported by substantial evidence. First, the ALJ focused upon the doctors' evaluations of Plaintiff's conditions. During the time period at issue, the ALJ noted objective findings of tenderness and spasm in the cervical muscles with mild limitation of motion; no neurological deficits; normal range of motion, strength and muscle tone; and moderate degenerative changes of the cervical spine. R. 132–33, 208–09, 215–16, 234. The ALJ considered Dr. Buchoff's Medical Assessment of Abilities to do Work–Related Activities and concluded that it was not entitled to great weight because there were no findings supporting the sitting and walking limitations, Plaintiff routinely walked to a friend's house to visit, and her weekly attendance at church suggested the ability to sit through a one-hour service. R. 22. These are appropriate reasons for discounting a treating physician's opinion. *See Edwards*, 937 F.2d at 583. In this case, the ALJ's reasons are supported by substantial evidence. Upon Dr. Buchoff's exam, the only objective finding was "questionable mild weakness in arms and legs." R. 213. Other physicians similarly reported very limited medical findings. Thus, the ALJ did not err by according little weight to Dr. Buchoff's opinion.

Plaintiff argues that the ALJ erred by failing to credit manipulative limitations assigned by Dr. Buchoff because he reported that reaching, handling, feeling, and pushing/pulling would be affected by her impairments. Plaintiff contends that such manipulative limitations would preclude a wide range of sedentary or light work. Dr. Buchoff did not, however, indicate how or to what extent such functions would be

---

substantially elevated, it usually indicates injury or stress to one or more of these areas. *See* MEDLINEplus at,

http://www.nlm.nih.gov/medlineplus/ency/article/003503.htm (last visited Oct. 23, 2002).

**1328**

limited. Nor was there any evidence of record upon which manipulative limitations could be based. Thus, the ALJ was under no obligation to extract limitations from such a vague statement of "limitation."

 Plaintiff also contends, through a footnote, that the ALJ erred by failing to specify the weight assigned to Dr. Godleski's opinion. Despite the fact that Dr. Godleski last evaluated Plaintiff in January 1998 and the relevant time period before the ALJ began in February 1998, the ALJ considered his records and assigned limitations, without specifying the weight accorded them. Plaintiff does not claim that these limitations are inconsistent with the ALJ's assigned RFC of sedentary work. Better practice would have been for the ALJ to state the weight accorded the opinion; however, the restrictions were assigned prior to Plaintiff's first ALJ decision, a time period when Plaintiff could perform at least a wide range of sedentary work as a matter of law. For these reasons, the ALJ did not commit reversible error with regard to his treatment of Dr. Godleski's opinions.

In determining Plaintiff's RFC, the ALJ also considered Plaintiff's subjective complaints pursuant to 20 C.F.R. §§ 404.1527–404.1529 and Social Security Rulings 96–2p and 96–7p. The ALJ determined that Plaintiff's testimony and subjective statements regarding her functional limitations were not totally credible. Specifically, the ALJ noted that (1) while Plaintiff had musculoskeletal impairment causing her to repeatedly seek treatment, clinical findings of abnormalities were minimal and x-rays showed degenerative changes consistent with age; (2) intensive evaluation by orthopedists, neurologists and rheumatologists

revealed no evidence of ongoing losses; (3) although she testified that she had a herniated disk, a recent MRI did not confirm this assessment; (4) there was no consistent evidence of true radicular symptoms or loss of muscle strength; (5) diagnosis remained uncertain even after numerous examinations by various specialists; (6) despite Plaintiff's allegations that she could not walk or stand more than ten minutes or sit more than 15 minutes, her doctor noted she had been very active twice when she had CPK checked; and (7) she walked after breakfast, went to her mother's, was able to drive, went to church weekly and watched television, activities inconsistent with severe chronic pain.

Plaintiff contests only that the ALJ discredited her complaints because of her church attendance. As the Commissioner points out, the ALJ is actually required to consider an individual's daily activities in assessing her credibility. *See* 20 C.F.R. §§ 404.1529(c)(3)(i); 416.929(c)(3)(i); SSR 96–7p. Here, the ALJ permissibly considered an aggregate of Plaintiff's activities, which combined with her report that she had been "very active" prior to her CPK level tests,[5] led him to conclude her activities were inconsistent with total disability. Accordingly, this reason was a specific and adequate reason for the ALJ to discredit Plaintiff's testimony and was supported by substantial evidence.

Plaintiff does not contest any of the other reasons the ALJ provided for discrediting her testimony. Independent review of the record reflects that these reasons are also supported by substantial evidence. *See e.g.*, R. 40–42, 43, 46, 132–33, 206, 208–09, 213, 215–16, 226, 234. Accordingly, the ALJ met his duty to artic-

**5.** Neurologist William David Honeycutt, M.D., reported, "I suggest we have the patient repeat a CPK level in approximately one week after being completely sedentary (patient admits to being fairly active physically prior to

the 2 previous CPK levels being obtained)." R. 226. Thus, it is clear that Plaintiff's activity exceeded what her neurologist felt was sedentary exertion.

ulate specific and adequate reasons, based on substantial evidence, for discrediting Plaintiff's testimony regarding her subjective complaints. *See Foote*, 67 F.3d at 1561–62; *see also, Jones*, 941 F.2d at 1532.

Based upon the assigned RFC, the ALJ determined that Plaintiff could not perform past relevant work as a factory worker or factory floor person. R. 24. He, therefore, proceeded to step five of the sequential evaluation process and, because he determined Plaintiff could perform the full range of sedentary work, applied the grids to find Plaintiff not disabled. Plaintiff contends application of the grids was error in light of her manipulative limitations, a contention which fails for the reasons discussed above. Plaintiff also claims the ALJ could not apply the grids because "[his] evaluation of Plaintiff's credibility with respect to her allegations of disabling pain did not properly address whether Plaintiff's pain constituted a non-exertional impairment." Docket No. 16 at 15. This argument is also without merit: it is clear that the ALJ considered Plaintiff's pain as a non-exertional impairment. It was on the basis of pain that the ALJ determined that Plaintiff could not walk or stand for prolonged periods, or perform the lifting requirements of light work. Because the ALJ properly determined that Plaintiff could perform a full range of sedentary work, his exclusive reliance on the grids at step five was justified. *See Allen*, 880 F.2d at 1202.

## VI. *CONCLUSION*

For the reasons stated above, the decision of the Commissioner is **AFFIRMED**. The Clerk of the Court is directed to enter judgment accordingly and to close the file.